Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representative, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner with some modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At such time, an employment relationship existed between plaintiff-employee and defendant-employer.
3. The carrier, Liberty Mutual Insurance Company, was the workers compensation administrator or workers compensation carrier on the risk.
4. On 1 July 1998, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
5. Defendants initially issued payment of compensation pursuant to a Form 60 Employers Admission of Employees Right to Compensation, dated 29 July 1998, for an injury occurring on 1 July 1998.
6. Plaintiffs average weekly wage was $822.00.
7. Defendants have paid plaintiff compensation at the rate of $532.00 per week from 1 July 1998 through 28 October 1998. On 28 April 1999, defendants issued a check for the payment of temporary total benefits from 30 March 1999 through 26 April 1999.
8. Defendants have paid or will pay all medical bills arising from plaintiffs injury up to the date of hearing before the Deputy Commissioner.
In addition, the parties stipulated into evidence the following:
1. Copy of a check and stub.
2. Form 62 Notice of Reinstatement of Compensation.
The 6 May 1999 Pre-Trial Agreement that was submitted by the parties is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was forty years old at the time of the hearing before the Deputy Commissioner, worked for defendant-employer for approximately sixteen years as a package car driver. Plaintiffs job involved adding some packages to a pre-loaded truck and making deliveries within a designated area. The packages on his truck weighed up to 150 pounds, and he spent most of his working hours unloading the packages from his truck and delivering them to customers. Plaintiff delivered approximately 300 to 500 packages each day.
2. On 1 July 1998, plaintiff sustained a compensable injury at work when he hurt his back while lifting packages. He was sent to Concentra Medical Center for treatment. Plaintiffs condition was diagnosed as a lumbosacral sprain or a mechanical lumbar spine injury, and he was treated conservatively with medication and physical therapy. The doctors at Concentra Medical Center also restricted his work activities with limited lifting. Despite the treatment, he continued to suffer from persistent back pain and intermittent numbness in his groin, so he was referred to Scott A. Sanitate, M.D., a physiatrist. Dr. Sanitate also thought that plaintiffs back pain came from a muscular source and provided conservative treatment, including work restrictions. However, defendant-employer would not provide work within plaintiffs medical restrictions. Furthermore, defendant-employer insisted that plaintiff be released without restrictions before he would be allowed to return to work.
3. Plaintiff continued to complain of back pain. Dr. Sanitate ordered an MRI, which revealed a small herniated disc at L5-S1 with some narrowing of the left L5 neural foramen, but the doctor did not believe that plaintiffs symptoms were related to the findings. On 2 November 2000, Dr. Sanitate administered a trigger point injection at plaintiffs L3-4 to help alleviate the source of his pain. Although plaintiff did not appear to be magnifying his symptoms on examination, Dr. Sanitate decided to release him on a graduated return to work schedule with no physical restrictions. Plaintiff was to return to work for four hours the first week, six hours the second week, and eight hours by the third week.
4. Plaintiff reported to work on 3 November 1998. However, within one and one-half hours of beginning his route that morning, plaintiff was unable to continue working because of increased pain. His supervisor finished the route for him. The next day, plaintiff again reported for work, but he was only able to work less than two hours before the pain became intolerable. Although plaintiff reported for work a number of days thereafter, by the time he had commuted forty-five minutes from his home, his back pain was severe enough that he was unable to do the repetitive, heavy lifting required by his job.
5. Despite plaintiffs back problems and his sincere presentation, Dr. Sanitate would not give him any work restrictions. Plaintiff received another trigger point injection on 17 November 2000 and was prescribed different pain medication to help alleviate his symptoms. Dr. Sanitate continued plaintiff on the graduated return to work schedule. Since plaintiff had no medical authorization from the doctor for his disability, defendant-employer terminated his employment.
6. Plaintiff was then referred to Daniel J. Albright, M.D., an orthopedic surgeon, for an independent medical examination. At his examination on 18 January 1999, plaintiff described the back pain that he had been experiencing for the previous six months and also indicated that he had intermittent leg pain and numbness in his groin. After examining plaintiff, Dr. Albright was of the impression that he was experiencing discogenic back pain, a somewhat unusual problem apparently related to a degenerative disc releasing irritating chemicals which affected the surrounding tissues and nerves. Dr. Albright ordered a discogram to confirm his impression, and the test proved to be positive at the L5-S1 interspace.
7. Dr. Albright then offered plaintiff the option of surgery to remove the disc and fuse that interspace, and plaintiff elected to undergo the procedure. On 1 April 1999, plaintiff underwent the operation. He was still recovering from the surgery as of the date of hearing before the Deputy Commissioner on 6 May 1999.
8. Defendants admitted liability for benefits for plaintiffs 1 July 1998 injury pursuant to a Form 60 Employers Admission of Employees Right to Compensation filed with the Commission. Defendants paid compensation to plaintiff for total disability through 28 October 1998 and then terminated compensation, presumably based upon Dr. Sanitates work release. However, Dr. Sanitate was not aware that plaintiff was experiencing discogenic back pain and the work release was inappropriate, as evidenced by the increased symptoms plaintiff experienced upon attempting to work. The repetitive, heavy lifting required by his regular job was not suitable considering his condition. Despite plaintiffs inability to work more than a few hours, defendants terminated payment of compensation without filing a Form 24 Application to Terminate or Suspend Payment of Compensation with the Commission.
9. Defendants did not reinstate payment of compensation to plaintiff until 28 April 1999. At that time, defendants paid a lump sum to plaintiff covering his disability beginning 30 March 1999.
10. As a result of the debilitating pain arising from his injury at work, plaintiff was unable to work in his regular job, even at reduced hours, from 29 October 1998 through 29 March 1999. Although he could have performed light work of some sort during that time, defendant-employer did not offer plaintiff work which was suitable to his capacity. Plaintiff was still within the healing period from his injury throughout the disputed time.
11. Plaintiff had not reached maximum medical improvement with respect to his 1 July 1998 injury as of the date of the hearing before the Deputy Commissioner. Plaintiff has been unable to return to suitable, gainful employment since his injury. Defendants agreed to continue payment of compensation to plaintiff for necessary weeks thereafter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In an admittedly compensable workers compensation case, defendants may not unilaterally terminate payment of compensation to the injured employee when the employee fails to return to work, even though the treating physician has released him to work at full duty. Defendants must comply with G.S. 97-18.1 and Rule 404 of the Workers Compensation Rules, which require defendants to file a Form 24 Application to Terminate or Suspend Payment of Compensation with the Commission for an administrative ruling on the issue.
2. Plaintiffs attempt to work a couple of hours on two days in November 1998 did not constitute a return to work as contemplated by G.S. 97-18.1.
3. Despite the medical release from Dr. Sanitate, plaintiff was in fact unable to perform his regular job duties from 29 October 1998 through 29 March 1999 and was entitled to continuing compensation for total disability at the rate of $532.00 per week throughout that time, with the exception of the week in which he worked a few hours and earned wages. Plaintiff is entitled to compensation for temporary partial disability at the rate of two-thirds of the difference between his former average weekly wage of $822.00 and the wages he earned for that week. G.S. 97-29,97-30.
4. Plaintiff remains totally disabled and is entitled to continuing total disability compensation from 27 April 1999 until he returns to work or until further order of the Commission. G.S. 97-29.
5. Having failed to pay the compensation due to plaintiff between 29 October 1998 and 29 March 1999 on a timely basis and having failed to comply with Commission Rules regarding termination of compensation, defendants are liable to plaintiff for an additional ten percent of the compensation due as a penalty. G.S. 97-18(g), 97-18.1, Rule 404 of the Workers Compensation Rules.
6. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred by him as a result of his injury by accident for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiffs period of disability. G.S. 97-2(19); 97-25.
7. Plaintiffs attorney is entitled to a reasonable attorneys fee in the amount of $750.00 as a part of the costs on appeal to the Full Commission. G.S. 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for total disability at the rate of $532.00 per week for twenty and five-sevenths weeks for the period from 29 October 1998 through 29 March 1999, excluding one week of temporary partial disability. This compensation has accrued and shall be paid in a lump sum, subject to the attorneys fee approved in this Award.
2. Defendants shall pay compensation to plaintiff for temporary partial disability for one week at the rate of two-thirds of the difference between his former average weekly wage of $822.00 and the wages he earned during the week of 3 November 1998. This compensation has also accrued and shall be paid in a lump sum, subject to the attorneys fee approved in this Award.
3. Defendants shall continue to pay plaintiff total disability compensation in the amount of $532.00 per week from 27 April 1999 until such time as plaintiff returns to work or further order of the Commission.
4. Defendants shall also pay a penalty in the amount of ten percent of the compensation awarded for their failure to pay compensation due to plaintiff on a timely basis. This penalty is subject to the attorneys fee approved in this Award.
5. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury by accident for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiffs period of disability.
6. A reasonable attorneys fee in the amount of twenty five percent of the compensation and penalty awarded for plaintiff is approved for plaintiffs counsel. The attorneys fee shall be deducted from the compensation due plaintiff and shall be paid directly to plaintiffs counsel.
7. Defendants shall pay the costs.
8. Defendant-carrier shall pay as part of the bill of costs, an attorneys fee to plaintiffs attorney in the amount of $750.00 for defending this appeal to the Full Commission. This fee is in addition to the attorneys fee in paragraph 6 of this Award.
 S/___________________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________________ LAURA K. MAVRETIC COMMISSIONER